UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

VICTOR BURACHEK and NATALIA
BURACHEK,

        Plaintiffs,

   v.

CHASE HOME FINANCE, LLC,
NORTHWEST TRUSTEE SERVICES,
INC., SETERUS, INC., formerly
known as Lender Business
Process Services, Inc.,
FREEDOM HOME MORTGAGE
CORPORATION, MORTGAGE
ELECTRONIC REGISTRATION
SYSTEMS, FEDERAL NATIONAL
MORTGAGE ASSOCIATION, and DOES
1 through 100 inclusive,

        Defendants.

_____/

NO. CIV. 2:12-1771 WBS CKD

MEMORANDUM AND ORDER RE:
MOTION TO DISMISS AND
SANCTIONS

----oo0oo----

      Plaintiffs Victor Burachek and Natalia Burachek filed

suit in state court against defendants Chase Home Finance, LLC

("Chase"), Northwest Trustee Services, Inc. ("Northwest"),

Seterus, Inc., formerly known as Lender Business Process

Services, Inc. ("Seterus"), Freedom Home Mortgage Corporation

1   ("Freedom Home"), Mortgage Electronic Registration Systems

2   ("MERS"), and Federal National Mortgage Association ("Fannie

3   Mae"), bringing claims arising from defendants' allegedly

4   wrongful conduct related to a residential loan.  Plaintiffs filed

5   a First Amended Complaint ("FAC"), which defendants JPMorgan

6   Chase Bank, N.A., who appears on behalf of Chase as successor by

7   merger to Chase Home Finance, LLC, and MERS removed to this court

8   on the basis of federal question jurisdiction.  (Docket No. 1.)

9   Currently before the court are two motions to dismiss the FAC in

10  its entirety for failure to state a claim upon which relief can

11  be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

12  (Docket Nos. 5, 9.)

13  I.   Factual and Procedural Background

14         Plaintiffs obtained a loan of $409,500 in April 2008

15  from Freedom Home.  (Not. of Removal Ex. 2 ("FAC") ¶ 19, Ex. 2.)

16  The loan agreement between the parties was secured by a Deed of

17  Trust on property located at 8120 Patton Avenue in Citrus

18  Heights, California (the "Patton Avenue property").  (Id. ¶ 19,

19  Ex. 2.)

20         A Notice of Default was recorded on February 27, 2009,

21  listing the default as $16,288.70.  (Id. ¶ 24, Ex. 4.)  A Notice

22  of Trustee's Sale was recorded in June of 2009, scheduling a sale

23  for June 17, 2009.  (Id. ¶ 26, Ex. 6.)  That document listed the

24  total amount of the unpaid balance as $428,015.31.  (Id. Ex. 6.)

25  Another Notice of Trustee's Sale was recorded in April 2011,

26  listing the unpaid balance as $482,832.51 and setting the sale

27  for April 26, 2011.  (Defs.' Req. for Judicial Notice ("RJN") Ex.

28  F (Docket No. 10).)  Chase, who was assigned the Deed of Trust in

February 2009, (FAC ¶ 25, Ex. 5), repurchased the Patton Avenue

property at a foreclosure sale in February of 2012, (FAC ¶ 30;

RJN Ex. G.)  The property was then allegedly transferred to

Fannie Mae.  (FAC ¶¶ 30, 40.)

The FAC alleges a variety of problems with the

foreclosure process, including that the Note and Deed of Trust

were separated, (see, e.g., id. ¶¶ 4, 43-44), that no defendant

had standing to foreclose because no defendant had a valid

interest in the subject property (see, e.g., id. ¶¶ 4, 7, 41,

56), that the Deed of Trust was improperly securitized (see, e.g.

¶¶ 7, 46-49, 71-73), and that certain foreclosure documents were

signed by a "robo-signer," (id. ¶¶ 23-25, 52).  Additionally,

plaintiffs allege that the Notice of Default is "facially

inaccurate" because it does not identify the mortgagee or

beneficiary as required by state law, and so they never received

a valid Notice of Default, (id. ¶¶ 74-75), and suggest that MERS'

role in the foreclosure process was improper because MERS was not

registered to do business in California at the time the loan was

memorialized, (id. ¶ 29).[1]

The FAC also alleges that plaintiffs "entered into a

Home Affordable Modification Program ('HAMP') with Defendant

CHASE on or about December 1, 2009," and continued making the

"'trial period payment' faithfully p and [sic] through the time

Defendant CHASE sent Plaintiffs a letter . . . which informed

---

[1]      The court notes that MERS is statutorily exempted from
the requirement to obtain a certificate of qualification to
conduct business in California.  Foster v. SCME Mortg. Bankers,
Inc., No. Civ. 2:10-518, 2011 WL 219562, at *4 (E.D. Cal. Jan.
20, 2011).

Plaintiffs that the 'servicing of your home loan . . . will be transferred from CHASE HOME FINANCE to [SETERUS] on October 1, 2010." (Id. ¶¶ 62-63.)  That same letter allegedly also informed plaintiffs that the transfer would "not affect any terms or condition of your mortgage documents, other than terms directly related to the servicing of your loan." (Id. ¶ 64, Ex. 7.) According to plaintiffs, they were in the HAMP trial period for fourteen months, but when Seterus took over servicing, it "refused to honor Plaintiffs' loan modification and implied contract between Defendant CHASE and Plaintiffs." (Id. ¶¶ 66, 92.)

Finally, plaintiffs additionally allege that they attempted to resolve the controversy that had arisen between the parties by "seeking Clarification of the specifics" of the loan agreement, but that no clarification was provided. (Id. ¶ 6.) The FAC does not articulate the issues plaintiffs were attempting to clarify or the terms of this alleged meeting of the minds.

Plaintiffs bring claims for (1) declaratory relief, (2) injunctive relief, (3) breach of the implied covenant of good faith and fair dealing, (4) rescission, (5) unfair and deceptive acts and practices, (6) cancellation, (7) breach of fiduciary duty, (8) unconscionability, (9) quiet title, (10) wrongful foreclosure, (11) slander of title, (12) securities fraud, (13) trespass on contract, (14) negligence, (15) violation of the Real Estate Settlement Procedures Act ("RESPA"), (16) violation of the California Unfair Competition Law ("UCL"), and (17) fraud. (Docket No. 1, Ex. 2.)  Defendants Chase and MERS, jointly, and Freedom Home move to dismiss all claims for failure to state a

4

1 claim pursuant to Rule 12(b).  (Docket Nos. 5, 9.)  Defendant

2 Northwest joined the motion brought by Chase and MERs.  (Docket

3 No. 12.)  Plaintiffs failed to file an opposition or statement of

4 non-opposition as required by Local Rule 230(c).

5 II.  Request for Judicial Notice

6         In general, a court may not consider items outside the

7 pleadings when deciding a motion to dismiss, but it may consider

8 items of which it can take judicial notice.  Barron v. Reich, 13

9 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial

10 notice of facts "not subject to reasonable dispute" because they

11 are either "(1) generally known within the territorial

12 jurisdiction of the trial court or (2) capable of accurate and

13 ready determination by resort to sources whose accuracy cannot

14 reasonably be questioned."  Fed. R. Evid. 201.  Judicial notice

15 may properly be taken of matters of public record outside the

16 pleadings.  See MGIC Indem. Corp. v. Weisman, 803 F.2d 500, 504

17 (9th Cir. 1986).

18         Defendants request that the court judicially notice

19 several recorded documents pertaining to the Patton Avenue

20 property.  (See RJN Exs. A-H.)  The court will take judicial

21 notice of these documents, since they are matters of public

22 record whose accuracy cannot be questioned.  See Lee v. City of

23 Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001).

24         Defendants also request that the court judicially

25 notice items filed in the underlying state court action.  (RJN

26 Exs. I-J.)  Judicial notice may properly be taken of proceedings

27 from other cases.  See Bennett v. Medtronic, Inc., 285 F.3d 801,

28 803 n. 2 (9th Cir. 2002) ("[W]e may take notice of proceedings in

1   other courts, both within and without the federal judicial

2   system, if those proceedings have a direct relation to matters at

3   issue.") (quoting U.S. ex rel. Robinson Rancheria Citizens

4   Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992))

5   (internal quotation marks omitted).  The court will grant

6   defendants' request, but the court takes judicial notice of the

7   fact of the proceedings only and not of any facts contained

8   within the documents.  See Lee, 250 F.3d at 690.

9           Finally, defendants submit a license to maintain and

10  operate a residential care facility issued by the Department of

11  Social Services of the State of California and the results of a

12  search for "Golden Crest" on the State of California's Community

13  Care Licensing Division's website.  (RJN Exs. K-L.)  Because the

14  court does not rely on these documents, it declines to take

15  judicial notice of them.

16  III. Discussion

17          To survive a motion to dismiss, a plaintiff must plead

18  "only enough facts to state a claim to relief that is plausible

19  on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570

20  (2007).  This "plausibility standard," however, "asks for more

21  than a sheer possibility that a defendant has acted unlawfully,"

22  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), and "[w]here a

23  complaint pleads facts that are 'merely consistent with' a

24  defendant's liability, it 'stops short of the line between

25  possibility and plausibility of entitlement to relief.'"  Id.

26  (quoting Twombly, 550 U.S. at 557).  In deciding whether a

27  plaintiff has stated a claim, the court must accept the

28  allegations in the complaint as true and draw all reasonable

1  inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416

2  U.S. 232, 236 (1974), overruled on other grounds by Davis v.

3  Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322

4  (1972).

5      A.  Declaratory Relief

6          Under California law, a request for declaratory relief

7  "operates prospectively, and not merely for the redress of past

8  wrongs."  Britz Fertilizers, Inc. v. Bayer Corp., 665 F. Supp. 2d

9  1142, 1173 (E.D. Cal. 2009) (quoting Babb v. Superior Court, 3

10  Cal. 3d 841, 848 (1971)).  This is because one of the purposes of

11  declaratory relief is "to enable the parties to shape their

12  conduct so as to avoid a breach."  Id.  When a litigant has "a

13  fully matured cause of action for money," he must seek damages as

14  his remedy and not declaratory relief.  Canova v. Trs. of

15  Imperial Irrigation Dist. Emp. Pension Plan, 150 Cal. App. 4th

16  1487, 1497 (4th Dist. 2007).  He may not use a claim for

17  declaratory relief as a "superfluous 'second cause of action for

18  the determination of identical issues.'"  Britz, 665 F. Supp. 2d

19  at 1173 (quoting Hood v. Superior Court, 33 Cal. App. 4th 319,

20  324 (1995)).

21          Plaintiffs request that the court declare that

22  defendants have no right to foreclose on the Patton Avenue

23  property.  A foreclosure sale, however, has already occurred and

24  the remainder of their claims seek to challenge the validity of

25  that sale.  Because plaintiffs' claim for declaratory relief

26  would only address past wrongs and would add nothing to the

27  proceeding in terms of either issues addressed or relief sought,

28  it is inappropriate.  See Mangindin v. Wash. Mut. Bank, 637 F.

1  Supp. 2d 700, 707 (N.D. Cal. 2009) (dismissing declaratory relief

2  claim as duplicative and unnecessary where plaintiffs sought

3  declaration that defendants did not have the right to foreclose

4  in addition to bringing a variety of claims challenging

5  foreclosure).  Accordingly, the court will grant defendants'

6  motion to dismiss this claim.

7       B.   Injunctive Relief

8            Under California law, requests for injunctive relief

9  have been consistently classified as remedies and not valid

10  causes of action in their own rights.  See, e.g., Shell Oil Co.

11  v. Richter, 52 Cal. App. 2d 164, 168 (4th Dist. 1942)

12  ("Injunctive relief is a remedy and not, in itself, a cause of

13  action.").  Accordingly, the court will grant defendants' motion

14  to dismiss plaintiffs' second cause of action.

15       C.   Breach of the Implied Covenant of Good Faith and Fair

16            Dealing

17            "Every contract imposes upon each party a duty of good

18  faith and fair dealing in its performance and its enforcement."

19  Marsu, B.V. v. Walt Disney Co., 185 F.3d 932, 937 (9th Cir. 1999)

20  (quoting Carma Developers, Inc. v. Marathon Dev. Cal., Inc., 2

21  Cal. 4th 342, 371 (1992)).  "A typical formulation of the burden

22  imposed by the implied covenant of good faith and fair dealing is

23  'that neither party will do anything which will injure the right

24  of the other to receive the benefits of the agreement.'"  Andrews

25  v. Mobile Aire Estates, 125 Cal. App. 4th 578, 589 (2005)

26  (quoting Gruenberg v. Aetna Ins. Co., 9 Cal. 3d 566, 573 (1973)).

27            It appears that plaintiffs allege that all defendants

28  owed them a duty of good faith and fair dealing on the basis of

8

the trial loan modification and "implied contract" that Chase
provided plaintiffs that was allegedly breached when Seterus did
not offer plaintiffs a permanent modification and refused to
accept the lower payments provided for under the trial period
plan.  However, nowhere in the FAC do plaintiffs explain why they
were entitled to continue the trial payments indefinitely.  The
fact that plaintiffs refer to it as a trial period suggests that
it was not a binding, permanent arrangement.  Nor does Chase's
alleged representation that the "transfer of servicing of
[plaintiffs'] loan does not affect any terms or condition of your
mortgage documents," (FAC ¶ 64), suggest that Seterus would
indefinitely extend the trial period.  The FAC has no indication
as to why plaintiffs would have believed that they were entitled
to be approved for a permanent modification.

        The FAC's additional allegations that all defendants
"enjoyed substantial discretionary power affecting" plaintiffs'
rights and that they "willfully breached their implied covenant
of good faith and fair dealing," causing plaintiffs "injury and .
. . the threat of loss of [their] personal home," (id. ¶¶ 88,
96), are conclusory allegations that simply do not meet federal
pleading standards.  Accordingly, the court will grant
defendants' motion to dismiss plaintiffs' claim for breach of the
implied covenant of good faith and fair dealing.

    D.   Fraud and Unfair and Deceptive Business Acts and
         Practices

        In California, the essential elements of a claim for
fraud are "(a) a misrepresentation (false representation,
concealment, or nondisclosure); (b) knowledge of falsity (or

9

'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." _In re Estate of Young_, 160 Cal. App. 4th 62, 79 (2008).  Under the heightened pleading requirements for claims of fraud under Federal Rule of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting the fraud."  Fed. R. Civ. P. 9(b). The plaintiffs must include the "who, what, when, where, and how" of the fraud.  _Vess v. Ciba-Geigy Corp. USA_, 317 F.3d 1097, 1006 (9th Cir. 2003) (citation omitted).  "The plaintiff must set forth what is false or misleading about a statement, and why it is false."  _Decker v. Glenfed, Inc._, 42 F.3d 1541, 1548 (9th Cir. 1994).  Additionally, "[w]here multiple defendants are asked to respond to allegations of fraud, the complaint must inform each defendant of his alleged participation in the fraud."  _Ricon v. Reconstrust Co._, Civ. No. 09-937, 2009 WL 2407396, at *3 (S.D. Cal. Aug. 4, 2009) (quoting _DiVittorio v. Equidyne Extractive Indus._, 822 F.2d 1242, 1247 (2d Cir. 1987)).

Rule 9(b) "may apply to claims -- that although lacking fraud as an element -- are 'grounded' or 'sound' in fraud."  _Id._ (quoting _Vess_, 317 F.3d at 1103-04).  A claim is "grounded in fraud" when it alleges a unified course of fraudulent conduct. _Id._ at 624.  Plaintiffs' fifth cause of action for unfair and deceptive business acts and practices is based upon defendants' allegedly fraudulent preparation and procurement of documents to "fabricate the missing gaps in the chain of title or to falsely demonstrate compliance" with the Pooling Service Agreement.  (FAC ¶ 102.)  This claim, therefore, is subject to the heightened requirements of Rule 9.

1          Plaintiffs' allegations are far from sufficient to

2    survive a motion to dismiss.  In relation to the fraud claim,

3    plaintiffs merely allege that "Defendants have made several

4    representations to Plaintiffs with regard to material facts,"

5    that "NORTHWEST intentionally and fraudulently converted

6    Plaintiffs' right, title, and interest to their property," and

7    that defendants acted with the intent to "induce Plaintiffs into

8    believing they had authority to start the foreclosure process by

9    recording a false document."  (FAC ¶¶ 202-03.)  The allegations

10   related to their claims for unfair and deceptive business acts

11   are no more specific.

12          Such conclusory allegations do not include anything

13   approaching an explanation of the "who, what, when, where, and

14   how" of the alleged fraud.  They are also insufficient to explain

15   how each defendant participated in a fraudulent scheme.  See

16   Swartz v. KPMG, LLP, 476 F.3d 756, 764-65 (9th Cir. 2007) ("Rule

17   9(b) does not allow a complaint merely to lump multiple

18   defendants together but require[s] plaintiffs to differentiate

19   the allegations when suing more than one defendant . . . and

20   inform each defendant separately of the allegations surrounding

21   his alleged participation in the fraud." (citation omitted)).

22          Additionally, plaintiffs do not allege how the actions

23   out of which their fraud-based claims arise caused them any

24   damage.  To survive a motion to dismiss, the complaint "must show

25   a cause and effect relationship between the fraud and damages

26   sought; otherwise no cause of action is stated."  Small v. Fritz

27   Cos., 30 Cal. 4th 167, 202 (2003) (citation omitted).

28          Plaintiffs allege that defendants' actions caused them

damages because their property is now subject to foreclosure. (FAC ¶ 104.)  In actual fact, recorded documents indicate that the property has already been sold at a foreclosure sale.  The Trustee's Deed Upon Sale shows that at the time of the sale the amount of unpaid debt together with costs totaled over $500,000. Plaintiffs do not dispute that they were in default.  Nor do they allege that the alleged fraudulent conduct caused them to fall behind on their mortgage or resulted in their home being sold at a foreclosure sale.  It would appear, then, that plaintiffs' default, not any actions by defendants, was the reason that their home faces or faced foreclosure.

Accordingly, plaintiffs' allegations fail to meet Rule 9(b)'s heightened pleading requirements, and the court will grant defendants' motion to dismiss plaintiffs' claims for fraud and unfair and deceptive business acts and practices.

E.   Rescission and Cancellation

"A written instrument, in respect to which there is a reasonable apprehension that if left outstanding it may cause serious injury to a person against whom it is void or voidable, may, upon his application, be so adjudged, and ordered to be delivered up or canceled."  Cal. Civ. Code § 3412.

> To 'cancel' a contract means to abrogate so much of it as remains unperformed.  It differs from 'rescission,' which means to restore the parties to their former position. The one refers to the state of things at the time of the cancellation; the other to the state of things existing when the contract was made."

Young v. Flickinger, 75 Cal. App. 171, 174 (1925); accord Phleger v. Countrywide Home Loans, Inc., Civ. No. 07-01686, 2009 WL 537189, at *15 (N.D. Cal. Mar. 3, 2009).

1    Plaintiffs allege that they are entitled to rescind
2    their loan due to improper securitization, fraudulent
3    concealment, and on public policy grounds.  They do not cite any
4    statute under which they seek rescission or allege that they have
5    taken any actions to rescind the loan.  As discussed above,
6    plaintiffs have failed to sufficiently allege fraudulent actions
7    by any defendants.  They also fail to explain what public policy
8    would be served by rescinding their loan or why any alleged
9    defects in the securitization process have harmed them such that
10   they should be entitled to rescind their loan.  Therefore the
11   court will grant defendants' motion to dismiss plaintiffs'
12   rescission claim.

13   Plaintiffs seek cancellation on a variety of grounds.
14   However, they do not explain how allowing the Deed of Trust to
15   stand will cause them any injury.  They have therefore not
16   sufficiently alleged that they are entitled to cancel their Deed
17   of Trust.  Accordingly, the court will grant defendants' motion
18   to dismiss plaintiffs' cancellation claim.

19   F.   Breach of Fiduciary Duty

20   The elements of a claim for breach of fiduciary duty
21   are (1) existence of a fiduciary relationship; (2) breach of the
22   fiduciary duty; and (3) damage proximately caused by that breach.
23   Roberts v. Lomanto, 112 Cal. App. 4th 1553, 1562 (3d Dist. 2003).
24   "[A]s a general rule, a financial institution owes no duty of
25   care to a borrower when the institution's involvement in the loan
26   transaction does not exceed the scope of its conventional role as
27   a mere lender of money."  Bridgeman v. United States, No. 10-
28   01457, 2011 U.S. Dist. LEXIS 6059, at *52 (E.D. Cal. Jan. 21,

13

2011) (citing <u>Nymark v. Heart Fed. Savs. & Loan Ass'n</u>, 231 Cal. App. 3d 1089 (3d Dist. 1991)).

Plaintiffs allege that defendants were in breach of a fiduciary duty when they failed to advise plaintiffs that they would have a "likelihood of defaulting on the loan" because defendants "have a fiduciary duty to the Alleged Borrower to not place them in that loan (in harms way)." (FAC ¶ 113.) Initially, the court fails to see how such allegations would apply to any defendant not involved in the propagation of the loan. More seriously, notwithstanding plaintiffs' insufficient and conclusory allegations that "Defendants were agents for Plaintiffs by express and implied contract and by operation of law," (<u>id.</u> ¶ 116), there are no allegations that any defendant acted outside the conventional role of money lender in a manner that would justify finding a fiduciary duty. Accordingly, the court will grant defendants' motion to dismiss this claim.

G.   <u>Unconscionability</u>

Plaintiffs purport to bring a claim for unconscionability. The doctrine of unconscionability, however, as the FAC itself recognizes, provides that if a court finds that a contract or any clause of a contract was unconscionable at the time it was made, "the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." (Id. ¶ 123.)

Unconscionability "has historically provided only a defense to enforcement of a contract, and normally cannot be used

1  offensively to obtain mandatory injunctive relief." Cal. Grocers
2  Ass'n v. Bank of Am., 22 Cal. App. 4th 205, 217 (1st Dist. 1994)
3  (citations omitted).  As embodied in California Civil Code
4  section 1670.5, "the doctrine is phrased in defensive terms" and
5  "does not in itself create an affirmative cause of action." Id.
6  While an affirmative cause of action may be provided by statute,
7  id., the FAC does not indicate that plaintiffs bring their action
8  under any such statute.  Accordingly, the court will grant
9  defendants' motion to dismiss plaintiffs' claim for
10 unconscionability.
11      H.   Quiet Title
12           California Code of Civil Procedure section 761.020
13 states that a claim to quiet title requires: (1) a verified
14 complaint, (2) a description of the property, (3) the title to
15 which a determination is sought, (4) the adverse claims to the
16 title against which a determination is sought, (5) the date as of
17 which the determination is sought, and (6) a prayer for the
18 determination of the title.  Cal. Code Civil Proc. § 761.020.
19           The tender rule applies to a quiet title action.
20 Kozhayev v. Am.'s Wholesale Lender, Civ. No. 09-2841 FCD DAD,
21 2010 WL 3036001, at *5 (E.D. Cal. Aug. 2, 2010); see also
22 Shimpones v. Stickney, 219 Cal. 637, 649 (1934).  A "quiet title
23 action is doomed in the absence of Plaintiffs' tender of the full
24 amount owed." Gjurovich v. Cal., Civ. No. 1:10-01871 LJO SMS,
25 2010 WL 4321604, at *8 (E.D. Cal. Oct. 26, 2010).  Here, among
26 other deficiencies, plaintiffs have not alleged tender or the
27 ability to tender.  Accordingly, the court will grant defendants'
28 motion to dismiss the quiet title claim.

1        I.   <u>Wrongful Foreclosure</u>

2            Wrongful foreclosure is an action in equity, where a

3   plaintiff seeks to set aside a foreclosure sale.  <u>See</u> <u>Karlsen v.</u>

4   <u>Am. Sav. & Loan Ass'n</u>, 15 Cal. App. 3d 112, 117 (2d Dist. 1971).

5   Plaintiffs' only allegations of wrongdoing in the foreclosure

6   process are that defendants had no power of sale because

7   defendants were not the "holder in due course of the Note"

8   associated with the Deed of Trust, that an "invalid sale occurred

9   prior to the execution of a Trustee's Deed Upon Sale against the

10  subject property," and that the foreclosing parties "violated

11  various foreclosure procedures of the Senate Bill 1137 Chapter

12  69."  (FAC ¶¶ 132-35.)

13           First, under California law, a party need not hold a

14  Note in order to foreclose on a property.  <u>Lane v. Vitek Real</u>

15  <u>Estate Indus. Grp.</u>, 713 F. Supp. 2d 1092, 1098-99 (E.D. Cal.

16  2010) (citing in part California Civil Code section 2924(a)(1),

17  which provides that a "trustee, mortgagee or beneficiary or any

18  of their authorized agents" may conduct the foreclosure process,

19  and concluding that California law "does not require a beneficial

20  interest in both the Note and the Deed of Trust to commence a

21  non-judicial foreclosure sale").  Plaintiffs do not dispute that

22  Northwest, the party responsible for recording various notices of

23  trustee's sales and the final notice of Trustee's Deed Upon Sale,

24  was the properly designated trustee.  (<u>See</u> FAC ¶ 36 (alleging

25  that Northwest is the "**SUBSTITUTED TRUSTEE**").)

26           Second, for all of plaintiffs' assertions that "void,"

27  "ineffectual," and "unlawful" transfers of various mortgage

28  documents occurred, they do not allege the dates of any of these

1  transfers, who the transfers were between, or allege in a manner

2  that is comprehensible to the court what about the transfers made

3  them illegal.  Although it is unlikely that plaintiffs could have

4  explained their claims in a manner that would have allowed the

5  FAC to stand, the court notes that attempting to decipher the FAC

6  was particularly difficult as plaintiff failed to file an

7  opposition.

8         Finally, plaintiffs allege that defendants violated

9  Senate Bill 1137 Chapter 69, but neglect to explain how

10 defendants violated this bill.  The excerpts of the bill that

11 plaintiffs include in their FAC discuss requirements related to

12 the filing of Notices of Default and Trustee's Sale.  (FAC ¶ 74.)

13 The court surmises that plaintiffs may be referencing their

14 allegation that the Notice of Default violated California law

15 requiring Notices of Default to identify the beneficiary because

16 it inaccurately stated that for plaintiffs to find out the amount

17 they owe on their mortgage, they should contact Wells Fargo.  The

18 Notice of Default, however, indicated that plaintiffs should

19 contact Chase to determine the amount that they owed and lists

20 MERS as the beneficiary, (id. Ex. 4), which is consistent with

21 the Deed of Trust, (compare id. Ex. 4, with id. Ex. 2).

22        As plaintiffs have not sufficiently alleged any

23 wrongful conduct in connection with the foreclosure on their

24 home, the court will dismiss plaintiffs' claim for wrongful

25 foreclosure.

26        J.   Slander of Title

27        To state a claim for slander of title, a plaintiff must

28 establish: "1) a publication; 2) which is without privilege or

17

1    justification; 3) which is false; and 4) which causes direct and

2    immediate pecuniary loss." <u>Jackson v. Ocwen Loan Servicing, LLC</u>,

3    Civ. No. 2:10-00711 MCE GGH, 2010 WL 3294397, at *4 (E.D. Cal.

4    Aug. 20, 2010) (citing <u>Manhattan Loft, LLC v. Mercury Liquors,</u>

5    <u>Inc.</u>, 173 Cal. App. 4th 1040, 1050-51 (2d Dist. 2009)).

6    Plaintiffs base their slander of title claim on the alleged false

7    recording of "various documents including a Notice of Trustee

8    [sic] Sale." (FAC ¶ 139.)  The only recorded document that

9    plaintiffs allege to be false other than the Notice of Trustee's

10   Sale is a Notice of Default.  (Id. ¶ 74.)

11        Notices of sale and notices of default, however, are

12   privileged communications under California law that cannot form

13   the basis for a slander of title claim absent an allegation of

14   malice.  <u>Ruiz v. SunTrust Mortg., Inc.</u>, Civ. No. 12-0878, 2012 WL

15   3028001, at *13 (E.D. Cal. July 24, 2012) (citing Cal. Civ. Code

16   § 2924(d)); <u>Kachlon v. Markowitz</u>, 168 Cal. App. 4th 316, 333-34

17   (2d Dist. 2008).  No malice is alleged here.

18        K.   <u>Securities Fraud</u>

19        Plaintiffs' claim for securities fraud alleges that

20   "Defendants have committed securities fraud under rule 144A by

21   privately securitizing their notes in 2001 without disclosing

22   this as required."  (FAC ¶ 140.)  The court can make neither

23   heads nor tails of this statement.  It has no idea what Rule 144A

24   is.  It is also not clear how plaintiffs would have standing to

25   bring a claim for violations of Rule 144A, whatever that may be,

26   as they do not explain how the alleged violations caused them any

27   particularized harm.  Accordingly, the court will grant

28   defendants' motion to dismiss plaintiffs' claim for "securities

1  fraud."

2      L.    Trespass on Contract

3          Plaintiffs' allegations in support of their trespass on
4  contract action consist of only one paragraph that references
5  their request for "Clarification" on the specifics of the
6  "Contract."  (FAC ¶ 182.)  As with plaintiffs' claim for
7  securities fraud, the court is at a loss to understand these
8  allegations.

9          First, the court does not know what a claim for
10  trespass on contract is, and conducting a search for the term in
11  California cases returned no instructive results.  As plaintiffs
12  have not seen fit to file the opposition or statement of non-
13  opposition required by local rules, the court does not have the
14  benefit of their explanation on the matter.

15          Second, plaintiffs' allegations regarding their request
16  for clarification are vague.  As a result, the court, and
17  therefore the defendants, cannot have a clear understanding of
18  what conduct is alleged to have resulted in trespass on contract.
19  It is not even clear what contract is involved or what matters
20  required clarification.

21          For all of these reasons, the court will grant
22  defendants' motion to dismiss plaintiffs' "trespass on contract"
23  claim.

24      M.    Negligence

25          Plaintiffs base their negligence cause of action on
26  allegations that defendants acted "as brokers of loans" and
27  "direct[ed] Plaintiffs into a laon [sic] for which Plaintiffs
28  were not qualified," "fail[ed] to perform acts in such a manner

1  as to not cause Plaintiffs harm," took payments and charged fees

2  "to which they were not entitled," and were responsible for

3  unauthorized reporting to credit reporting agencies.  (FAC ¶¶

4  184-87.)   To prove a cause of action for negligence, plaintiff

5  must show "(1) a legal duty to use reasonable care, (2) breach of

6  that duty, and (3) proximate cause between the breach and (4) the

7  plaintiff's injury."  Mendoza v. City of Los Angeles, 66 Cal.

8  App. 4th 1333, 1339 (2d Dist. 1998).  "The existence of a legal

9  duty to use reasonable care in a particular factual situation is

10  a question of law for the court to decide."  Vasquez v.

11  Residential Invs., Inc., 118 Cal. App. 4th 269, 278 (4th Dist.

12  2004).

13       While a mortgage broker has a fiduciary duty to a

14  borrower, a lender ordinarily does not.  Smith v. Home Loan

15  Funding, Inc., 192 Cal. App. 4th 1331, 1332 (2d Dist. 2011).  The

16  only suggestion that any defendant acted as a loan broker comes

17  in a single sentence, which baldly asserts that defendants

18  breached their duty to "perform acts as brokers of loans."

19  Without alleging any additional facts suggesting that any

20  defendant in fact acted as a broker, this is simply insufficient

21  to suggest that any defendant was a broker.  Because the FAC

22  fails to sufficiently allege that any defendant was a mortgage

23  broker, the FAC fails to sufficiently allege that any defendant

24  owed plaintiffs a duty of care stemming from the broker-borrower

25  relationship, and therefore fails to state a claim for

26  negligence.

27       Additionally, plaintiffs only summarily allege that "as

28  a result of the Defendants' negligence, Plaintiffs are entitled

1    to damages." (FAC ¶ 188.) These kinds of conclusory allegations

2    are insufficient to meet pleading requirements. Accordingly, the

3    court will grant defendants' motion to dismiss plaintiffs'

4    negligence claim.

5        N.    <u>RESPA</u>

6            Plaintiffs allege that defendants violated RESPA by

7    failing to comply with written disclosure requirements at the

8    time that they entered into the loan agreement in April 2007 and

9    again by failing to respond to plaintiffs' Qualified Written

10   Request ("QWR").

11           With respect to any failure to provide the required

12   disclosures at the time of closing, claims based on such failures

13   are time barred. Depending on which specific provision of the

14   statute is asserted, a RESPA claim must be made within one to

15   three years after the RESPA violation. 12 U.S.C. § 2614. "The

16   RESPA statute of limitations generally begins to run no later

17   than the date of actual disclosure of actions constituting an

18   alleged violation. Typically, in cases involving loan documents,

19   the statute begins to run when the documents are signed unless

20   evidence is presented to override this assumption." Metcalf v.

21   Drexel Lending Grp., Civ. No. 08-00731, 2008 WL 4748134, at *3

22   (S.D. Cal. Oct. 29, 2008) (citation omitted).

23           Here, more than three years have passed since the

24   signing of the loan documents, and plaintiffs have not alleged

25   any facts to support tolling. Thus, plaintiffs' RESPA claim is

26   time-barred.

27           With respect to a failure by one or more defendants to

28   respond to plaintiffs' QWR, § 2605 of RESPA relates to the

disclosures and communications required regarding the servicing of mortgage loans, and provides that loan servicers have a duty to respond to QWRs from borrowers asking for information relating to the servicing of their loan.  See 12 U.S.C. § 2605(e).  Loan servicers have 60 days after the receipt of a QWR to respond to the borrower inquiry.  Id. § 2605(e)(2).

Plaintiffs allege that defendants failed to provide a written explanation or response to their QWR.  (FAC ¶ 194.)  Not only did plaintiffs fail to include such basic information as when and to whom they mailed their QWR, but they also failed to allege that any defendant is in fact the servicer of their loan.  Instead, they simply allege that they "are not certain at this time exactly which of the Defendants was actually the servicer of the loan at any given time."  (Id. ¶ 192.)  "Without alleging that [defendants are] a 'loan servicer' under RESPA plaintiffs cannot show that [defendants] owed any duty to respond to their QWR, and accordingly plaintiffs' RESPA claim . . . must be dismissed."  Castaneda v. Saxon Mortg. Servs., Inc., 687 F. Supp. 2d 1191, 1199 (E.D. Cal. 2009) (dismissing RESPA claim where plaintiffs made identical allegations that they "are not certain at this time exactly which of [d]efendants was actually the servicer of the loan at any given time").

O.    Violation of California Business and Profession Code Section 17200

California's UCL prohibits "any unlawful, unfair or fraudulent business act or practice . . . ."  Cal. Bus. & Prof. Code § 17200.  This cause of action is generally derivative of some other illegal conduct or fraud committed by a defendant.

1   Khoury v. Maly's of Cal., Inc., 14 Cal. App. 4th 612, 619 (2d

2   Dist. 1993).  Plaintiffs base their UCL claim on defendants'

3   alleged "unlawful and fraudulent business practices."  (FAC ¶

4   198.)

5        "Under its 'unlawful' prong, 'the UCL borrows

6   violations of other laws . . . and makes those unlawful practices

7   actionable under the UCL.'"  Berryman v. Merit Prop. Mgmt., Inc.,

8   152 Cal. App. 4th 1544, 1554 (4th Dist. 2007) (quoting Lazar v.

9   Hertz Corp., 69 Cal. App. 4th 1494, 1505 (1st Dist. 1999)).

10  "Thus, a violation of another law is a predicate for stating a

11  cause of action under the UCL's unlawful prong."  Id.  Because

12  the court will grant defendants' motion to dismiss plaintiffs'

13  other claims and plaintiffs do not allege the violation of any

14  additional law as the basis for their UCL claim, the court must

15  also grant defendants' motion to dismiss plaintiffs' UCL claim.

16        IV.  Sanctions

17        Contrary to the requirements of the local rules,

18  plaintiffs' attorney failed to file any papers in opposition to

19  defendants' motions to dismiss, as he failed to do in another

20  case before this court just last month, Malixi v. U.S. Bank,

21  N.A., Civ. No. 12-1749.  The complaints in both cases were

22  remarkably similar, and for the same reasons were both largely

23  indefensible.  As the court noted in the previous proceeding,

24  even if plaintiffs' could not intelligibly oppose the motion, the

25  Local Rules clearly require counsel to file a statement of non-

26  opposition to the motion.  Specifically, according to Local Rule

27  230(c), opposition or a statement of non-opposition to the

28  granting of a motion must be filed and served not less than

1  fourteen days preceding the noticed hearing date.  Although not

2  required to do so, the court also unsuccessfully attempted to

3  contact plaintiffs' counsel to inquire whether plaintiffs would

4  be filing an opposition.

5       Local Rule 110 authorizes the court to impose sanctions

6  for "[f]ailure of counsel or of a party to comply with these

7  Rules."  In the earlier case, the court sanctioned plaintiffs'

8  counsel, Clifford B. Scherer, $1,000.00 for his failure to comply

9  with local rules.  He failed to pay those sanctions, or to show

10 cause why he should not be required to pay them, by the date

11 ordered, and contempt proceedings are currently pending against

12 him for his failure to comply with the Local Rules and the

13 court's orders.  Because those sanctions were clearly

14 insufficient, the court will increase the amount to $2,5000.00 in

15 this case.

16      IT IS THEREFORE ORDERED that defendants' motion to

17 dismiss be, and the same hereby is, GRANTED.

18      IT IS FURTHER ORDERED that within ten days of this

19 Order Clifford B. Scherer shall either (1) pay sanctions of

20 $2,500.00 to the Clerk of the Court, or (2) submit a statement of

21 good cause explaining his failure to comply with Local Rule

22 230(c).

23      Plaintiffs have twenty days from the date of this Order

24 to file an amended complaint, if they can do so consistent with

25 this Order.

26 DATED:  August 31, 2012

27 _____

28      WILLIAM B. SHUBB
        UNITED STATES DISTRICT JUDGE

24